UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:08-CV-664-H

**NEW ALBANY TRACTOR, INC.**                                                                     **PLAINTIFF**

**V.**

**LOUISVILLE TRACTOR, INC. and**                                                                 **DEFENDANTS**
**METALCRAFT OF MAYVILLE, INC.**
**d/b/a SCAG POWER EQUIPMENT**

**MEMORANDUM OPINION AND ORDER**

In this case, Plaintiff, New Albany Tractor, Inc. ("New Albany Tractor") claims that Defendants, Metalcraft of Mayville, Inc. d/b/a Scag Power Equipment ("Scag") and Louisville Tractor, Inc. (collectively referred to as "Defendants") violated the Robinson-Patman Act prohibition against discriminatory pricing preferences to large buyers.

Defendants have moved to dismiss the complaint. On October 13, 2009, the Court held a conference, thoroughly discussed the issues and allowed Plaintiff an additional fifteen (15) days to file an affidavit supporting its position. After reviewing that affidavit and for the reasons set forth below, the Court finds that the motions should be denied at this time and Plaintiff shall be given the opportunity to conduct discovery. However, the Court notes the high burden that Plaintiff must meet to proceed past discovery.

**I.**

This case involves the stream of commerce through which mowing equipment is manufactured and eventually sold to retail customers in the Louisville, Kentucky Metropolitan area. Scag, a Wisconsin corporation, is in the business of manufacturing and selling mowing

equipment. In the Louisville region,[1] Scag sells its products exclusively to Louisville Tractor. In turn, Louisville Tractor serves as both a retail outlet for sales to direct customers and as a wholesaler. In its role as a wholesaler, Louisville Tractor sells Scag equipment to all interested retailers in the Louisville region, including New Albany Tractor, which sells Scag mowers as well as other brands. Because of the exclusive distributor relationship between Scag and Louisville Tractor, Plaintiff and all other retailers in the Louisville region can purchase Scag equipment only from Louisville Tractor and not directly from Scag. New Albany Tractor objects to this arrangement and its alleged consequences.

Given the obvious nature of a distributor's business, Louisville Tractor sells Scag equipment to New Albany Tractor at a higher price than Scag sells the equipment to Louisville Tractor. New Albany Tractor alleges that this pricing structure allows Louisville Tractor to either sell Scag equipment to retail customers at a lower price than Plaintiff or sell Scag equipment at the same retail price as Plaintiff while keeping a much greater margin of profit. Because of these differences in the business between Louisville Tractor and Plaintiff, Plaintiff claims that it has lost potential customers and profits to Louisville Tractor.[2]

**II.**

A court should dismiss a complaint pursuant to Fed. R. Civ. P. 12(b)(6) "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *H. J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 249-50 (1989) (citation and quotation

---

[1] The pleadings do not indicate how large the Louisville region is or how many retailers it affects. Such information is unnecessary for the resolution of these motions.

[2] However, during the conference, Plaintiff suggested that Scag may use its control to make Louisville Tractor sell equipment for a lower price than they otherwise might.

omitted). The Court must "view the complaint in the light most favorable to the plaintiff [and] treat all well-pleaded allegations therein as true." *Amini v. Oberlin College*, 259 F.3d 493, 497 (6th Cir. 2001). While only a "short and plain statement of the claim" is required, Fed. R. Civ. P. 8(a)(2), "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation and quotation omitted). "[E]ven though a complaint need not contain 'detailed' factual allegations, its '[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true.'" *Assoc. of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

### III.

Plaintiff alleges that through Louisville Tractor's dual role as an exclusive distributorship and a retail outlet both Defendants violate the price discrimination provisions of the Robinson-Patman Act, 15 U.S.C. § 13(a). Congress passed the Robinson-Patman Act in 1936 as an amendment to the Clayton Act to prohibit large buyers from using discriminatory preferences over smaller buyers by virtue of their greater purchasing power. *Lewis v. Phillip Morris, Inc.*, 355 F.3d 515, 520 (6th Cir. 2004) (citation and quotation omitted). The Act prohibits two types of price discrimination: primary-line price discrimination and secondary-line price discrimination. *Id.* All parties agree that this case involves only secondary-line price discrimination, which occurs "when a seller's discrimination impacts competition among the seller's customers; i.e., the favored purchasers and disfavored purchasers." *Id.* (quoting *George*

*Haug Co., Inc. v. Rolls Royce Motor Cars, Inc.*, 148 F.3d 136, 141 (2d Cir. 1998)).

A secondary-line violation occurs where a seller provides a product to two customers at different prices, which gives one buyer a competitive advantage over the other. Although various courts have described the elements of such a claim in different ways, all agree on the same basic required elements: "(1) Two or more contemporaneous sales by the same seller; (2) At different prices; (3) Of commodities of like grade and quality; (4) Where at least one of the sales was made in interstate commerce; (5) The discrimination had the requisite effect upon competition generally; and (6) The discrimination caused injury to the plaintiff." *Rutledge v. Electric Hose & Rubber Co.*, 511 F.2d 668, 677 (9th Cir. 1975) (citations omitted). To survive the motion to dismiss, Plaintiff's complaint must allege each of these elements with sufficient detail "to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Assoc. of Cleveland Fire Fighters*, 502 F.3d at 548 (quoting *Twombly*, 550 U.S. at 555).

## IV.

Defendants primarily assert that Plaintiff has failed to plead any factual details of the first element, which requires two or more contemporaneous sales by the seller.[3] New Albany Tractor pleads only two transactions. On its face, Plaintiff's complaint alleges that Scag sold equipment directly to Louisville Tractor and that Louisville Tractor sold equipment to Plaintiff. Indeed,

---

[3]Although the parties contest, to some extent, how contemporaneous the sales must be to meet element (1), the Court will assume that Plaintiff has sufficiently pled the "contemporaneous" portion of element (1). The real contention between the parties is whether there were two sales by one seller.

4

Plaintiff asserts that Scag will not sell directly to it.[4] Thus, Plaintiff's complaint alleges only one sale by Scag and one sale by Louisville Tractor, not "two or more contemporaneous sales by the same seller" as required by element (1).

This apparent deficiency in Plaintiff's complaint, however, does not, by itself, bar Plaintiff's recovery here. Plaintiff relies on what is known as the "indirect purchaser doctrine" to support its allegations. The Seventh Circuit has well explained the doctrine in *Purolator Products, Inc. v. FTC*, 352 F.2d 874, 883 (7th Cir. 1965):

> If a seller can control the terms upon which a buyer once removed may purchase the seller's product from the seller's immediate buyer, the buyer once removed is for all practical, economic purposes dealing directly with the seller. If the seller controls the sale, he is responsible for the discrimination in the sale price, if there is such discrimination. If the seller cannot in some manner control the sale between his immediate buyer and a buyer once removed, then he has no power by his own action to prevent injury to competition.

As the Sixth Circuit has also explained, "The purpose of the indirect doctrine is to prevent a manufacturer from insulating itself from Robinson-Patman liability by using a 'dummy' wholesaler to make sales at terms actually controlled by the manufacturer." *Barnosky Oils, Inc. v. Union Oil Co. Of Cal.*, 665 F.2d 74, 84 (6th Cir. 1981). Where "it is clear . . . that [the defendant] is not a dummy wholesaler," it is appropriate to dismiss the plaintiff's claim for failure to allege sufficient facts showing control. *Barnosky Oils*, 665 F.2d at 84 (affirming the District Court's dismissal of the plaintiff's Robinson-Patman Act claims for failure to allege with sufficient factual detail that the manufacturer set or controlled the distributor's prices). For the

---

[4] Plaintiff does not argue that Louisville Tractor sells Scag's products at a lower price to other retailers in the Louisville region. Moreover, Plaintiff does not argue that Louisville Tractor "sells" Scag's products to its retail arm at a lower price than it sells the products to Plaintiff. In essence, Plaintiff does not contend that Louisville Tractor has engaged in any contemporaneous sales that are discriminatory. Rather, Plaintiff asserts only that Louisville Tractor's liability is derivative of Scag's liability.

purposes of this opinion, the issue regarding the indirect purchaser doctrine is quite straightforward: has Plaintiff sufficiently pled that Louisville Tractor is a "dummy" corporation for purposes of the Act, that is one through which Scag actually controls the terms of sales by Louisville Tractor to Plaintiff?  The Court will examine the pleadings themselves and then the additional evidence presented by Plaintiff following the Court's conference.

A.

Plaintiff first contends that its assertion that "Louisville Tractor buys from Scag and sells to retail customers in the form of Scag equipment and parts which are of like grade and quality to those which Scag *indirectly sells* to NAT [New Albany Tractor] through Louisville tractor," (Compl, ¶ 13), is sufficient to allege that Scag controls Louisville Tractor's sales to Plaintiff. However, this assertion is nothing more than "labels and conclusions" and, therefore, cannot be sufficient to survive a motion to dismiss.  *Twombly*, 550 U.S. at 555.

Plaintiff next contends that paragraphs 22 through 28 of the complaint are sufficient to allege Scag's control over Louisville Tractor's sales to Plaintiff. Plaintiff argues that the paragraphs, taken as a whole, allege that Scag's relationship with Louisville tractor is different from Scag's relationship with any other wholesaler of Scag's products and that this relationship benefits Scag's business in the Louisville region.  Even assuming these allegations to be true, they in no way allege that Scag controls the terms of Louisville Tractor's sales.  Alleging that Scag treats Louisville Tractor different from other wholesalers is not the same as alleging that Scag controls the sales of Louisville Tractor.

Plaintiff also argues that its allegation that Scag "refuses to allow retail dealers doing business in Louisville Tractor's exclusive sales area to purchase from any other Scag

6

distributors," (Compl. ¶ 24), is sufficient to allege that Scag controls Louisville Tractor's sales. While this may be some indication that Scag controls from whom Plaintiff can purchase its products, it in now way alleges that Scag controls the actual terms of the sales to Plaintiff as required by the indirect purchaser doctrine. To find that this allegation is sufficient to allege control would mean that every manufacturer that uses an exclusive distributor for a region "controls" that distributor's sales for purposes of the Robinson-Patman Act. Such a finding cannot be the intent of the law and the Court makes clear that simply showing that Scag has an exclusive distributorship with Louisville Tractor is insufficient for plaintiff to establish a cause of action under the Robinson-Patman Act.

The sum of Plaintiff's other allegations in paragraphs 22 through 28 is that Scag was "aware of," "actively encouraged," and "allowed" Louisville Tractor to sell its products at the prices Louisville Tractor used. These allegations are certainly not allegations of control. If anything, they indicate that Scag did *not* control Louisville tractor's sales. In fact, Plaintiff alleges that "Scag refuses to discourage Louisville Tractor from engaging in such actions and refuses to force Louisville Tractor to properly account for its distributor's discount in retail sales." (Compl. ¶ 28). This allegation strongly indicates that Scag does not exert control over Louisville Tractor's sales to Plaintiff.

**B.**

Faced with the complaint's failure to allege sufficient facts for the claim to proceed, the Court requested Plaintiff file an affidavit stating how it would prove the necessary element of control under the indirect purchaser doctrine. Plaintiff responded by asserting that Scag follows general manufacturer-distributorship customs where the manufacture requires certain terms and

conditions on the distributor's sale of the manufacturer's equipment to other retailers. Plaintiff further provided the Court with a pricing list allegedly created by Scag showing the sales price Scag set for its products to be purchased from Louisville Tractor.

While the Court believes that the evidence adduced by Plaintiff is not sufficient to prove its case at trial, the Court also recognizes that a claim should only be dismissed under Rule 12(b)(6) if it is clear that discovery will not lead to evidence that will sustain Plaintiff's action. Here, Plaintiff has asserted that Scag actually sets the prices for Louisville Tractor's sales. If Plaintiff can in fact show that Louisville Tractor is nothing more than a "dummy wholesaler" and that Scag sets the terms of sale from Louisville Tractor to New Albany Tractor, then Plaintiff can prevail.[5] This is a high burden. If Louisville Tractor sets its own price to New Albany Tractor, as may be suspected in a traditional distributorship relationship, even if that price allows Louisville Tractor some advantage, its actions do not violate the Act. There must be some additional control that makes the Louisville Tractor - Scag relationship different from a traditional distributorship.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendants' Motions to Dismiss are DENIED.

---

[5] It will not be sufficient, however, for Plaintiff to show only that Scag asserts control over the price at which Louisville Tractor sells Scag products to its retail consumers. Further, it will be insufficient to show that Scag "encourages" Louisville Tractor to charge certain amounts, as Plaintiff's affidavit suggests. Rather, Plaintiff will have to produce affirmative evidence that Scag set and controlled the prices at which Louisville Tractor sold Scag equipment to Plaintiff.

IT IS FURTHER ORDERED that the parties enter into an agreed litigation plan.

cc: Counsel of Record